ORIGINAL

MICHAEL P. VERNA (CA BAR #84070)
STEVEN P. MCFARLANE (CA BAR #240488)
BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875
Walnut Creek, California 94596
Telephone: (925) 935-3300
Facsimile: (925) 935-0371
Email: mverna@bowlesverna.com

JAMES HEALY-PRATT
Stewarts Law, LLP
5 New Street Square
London EC4A 3BF
United Kingdom
Telephone: +44 (0) 20 7822 8000
Email: jhp@stewartslaw.com
(admitted to bar of New York;
*pro hac vice* application pending)

Attorneys for Plaintiffs

FILED
2010 JUL -6 P 1:16
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBIN PER BJOROY, individually, as successor-in-interest to ALEXANDER PER BJOROY, deceased, and as Co-Personal Representative of the Estate of ALEXANDER PER BJOROY; JANE KATHRYN BJOROY, individually, as successor-in-interest to ALEXANDER PER BJOROY, deceased, and as Co-Personal Representative of the Estate of ALEXANDER PER BJOROY;<br><br>Plaintiffs,<br><br>vs.<br><br>AIRBUS S.A.S.; HONEYWELL INTERNATIONAL, INC.; THALES AVIONICS, S.A.; MOTOROLA, INC.; FREESCALE SEMICONDUCTOR, INC.; INTEL CORPORATION.; ROCKWELL COLLINS, INC.; HAMILTON SUNDSTRAND CORPORATION; GENERAL ELECTRIC COMPANY.; ROSEMOUNT AEROSPACE, INC.; E.I. DU PONT DE NEMOURS AND COMPANY; and TYCO ELECTRONICS CORPORATION;<br><br>Defendants. | **CIVIL CASE NO.:** CV 10 2950<br><br>**COMPLAINT FOR DAMAGES**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiffs ROBIN PER BJOROY, individually, as successor-in-interest to ALEXANDER PER BJOROY, deceased, and as Co-Personal Representative of the Estate of ALEXANDER

PER BJOROY; and JANE KATHRYN BJOROY, individually, as successor-in-interest to ALEXANDER PER BJOROY, deceased, and as Co-Personal Representative of the Estate of ALEXANDER PER BJOROY; through their undersigned attorneys, allege as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. 1332 based on diversity of the parties and that the amount in controversy exceeds $75,000; as well as multi-party multi-forum jurisdiction under 28 U.S.C. 1369, in that it involves at least minimal diversity between adverse parties and a single accident in a location other than the state where a defendant resides where at least seventy-five persons died.

**INTRADISTRICT ASSIGNMENT**

2. Venue in the Northern District of California, San Francisco Division, is proper pursuant to 28 U.S.C. 1398(a) and Local Rule 3-2, because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.

**PARTIES**

3. Plaintiffs are the heirs, survivors, and successors-in-interest to individuals who died when Air France Flight 447 from Rio de Janeiro to Paris crashed into the Atlantic Ocean on or about June 1, 2009, killing all on board.

4. Plaintiff ROBIN PER BJOROY is British national, and is successor-in-interest to his son ALEXANDER PER BJOROY, deceased, and the Co-Personal Representative of the Estate of ALEXANDER PER BJOROY.

5. Plaintiff JANE KATHRYN BJOROY is British national, and is successor-in-interest to her son ALEXANDER PER BJOROY, deceased, and the Co-Personal Representative of the Estate of ALEXANDER PER BJOROY.

6. ALEXANDER PER BJOROY, deceased, was a minor and a British National who died in the Air France Flight 447 crash.

7. Defendants AIRBUS, S.A.S. ("AIRBUS") is a French corporation with its principal place of business located in Toulouse, France. Defendant AIRBUS designs,

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

manufactures, assembles, markets, and sells commercial aircraft around the world, including the aircraft involved in the Air France Flight 447 crash.

8. This Court has general jurisdiction over defendant AIRBUS as this defendant does continuous and systematic business in this State, sufficient to subject them to the jurisdiction of this State.

9. Defendant HONEYWELL INTERNATIONAL, INC., ("HONEYWELL") is a Delaware corporation with its principal place of business in Morristown, New Jersey. HONEYWELL designs, manufactures, assembles, markets, and sells aerospace systems and products, including systems that were part of the Subject Aircraft and involved in the Flight 447 crash.

10. This Court has general jurisdiction over defendant HONEYWELL in that this defendant does continuous and systematic business in this State, including maintaining manufacturing, sales, and administrative offices in this State, sufficient to subject it to the jurisdiction of this State.

11. Defendant ROCKWELL COLLINS, INC. ("ROCKWELL COLLINS") is a Delaware corporation with its principal place of business in Cedar Rapids, Iowa. ROCKWELL COLLINS designs, manufactures, assembles, markets, and sells aerospace systems and products, including systems that were part of the Subject Aircraft and involved in the Flight 447 crash.

12. This Court has general jurisdiction over defendant ROCKWELL COLLINS as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

13. Defendant THALES AVIONICS, S.A. ("THALES"), is a French corporation with its principal place of business in Neuilly-sur-Seine, France. Defendant THALES designs, manufactures, assembles, markets, and sells aerospace systems and products, including systems that were part of the Subject Aircraft and involved in the Flight 447 crash.

14. This Court has general jurisdiction over defendant THALES as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State

15. Defendant MOTOROLA, INC. ("MOTOROLA") is a Delaware corporation with its principal place of business in Schaumberg, Illinois. MOTOROLA designs, manufactures, assembles, markets, and sells telecommunications products, including products that were part of the Subject Aircraft and involved in the Flight 447 crash. On information and belief, MOTOROLA divested its semiconductor business to another party in or around 2004, but is still responsible for the design, testing, and manufacturing process of products that were part of the Subject Aircraft prior to that divestiture.

16. This Court has general jurisdiction over defendant MOTOROLA as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State

17. Defendant Freescale Semiconductor, Inc. ("FREESCALE") is a Delaware corporation with its principal place of business in Austin, Texas. FREESCALE designs, manufactures, assembles, markets, and sells microprocessor and semiconductor products, including products that were part of the Subject Aircraft and involved in the Flight 447 crash.

18. This Court has general jurisdiction over defendant FREESCALE as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State

19. Defendant INTEL CORPORATION ("INTEL") is a Delaware corporation with its principal place of business in Santa Clara, California. INTEL designs, manufactures, assembles, markets, and sells microprocessors and computing products, including products that were part of the Subject Aircraft and involved in the Flight 447 crash.

20. This Court has general jurisdiction over defendant INTEL as this defendant resides in this State, and does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

21. Defendant HAMILTON SUNDSTRAND CORPORATION ("HAMILTON SUNDSTRAND") is a Delaware corporation with its principal place of business in Windsor Locks, Connecticut. HAMILTON SUNDSTRAND and its related entities design, manufacture, assembles, market, and sell aerospace systems and products, including systems that were part of the Subject Aircraft and involved in the Flight 447 crash.

22. This Court has general jurisdiction over defendant HAMILTON SUNDSTRAND as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

23. Defendant GENERAL ELECTRIC CO. ("GE") is a New York corporation with its principal place of business in Fairfield, Connecticut. Defendant GE designs, manufactures, assembles, markets, and sells aerospace systems and products, including aircraft engines, that were part of the Subject Aircraft and involved in the Flight 447 crash.

24. This Court has general jurisdiction over GE as this defendant does continuous and systematic business in this State, sufficient to subject them to the jurisdiction of this State.

25. Defendant ROSEMOUNT AEROSPACE, INC. ("ROSEMOUNT") is a New York corporation with its principal place of business in Burnsville, Minnesota. ROSEMOUNT designs, manufactures, assembles, markets, and sells aerospace systems and products, including systems that were part of the Subject Aircraft and involved in the Flight 447 crash.

26. This Court has general jurisdiction over defendant ROSEMOUNT as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

27. Defendant E.I. DU PONT DE NEMOURS AND COMPANY ("DUPONT") is a Delaware corporation with its principal place of business in Wilmington, Delaware. DUPONT designs, manufactures, assembles, markets, and sells wiring and other electrical products, including aerospace wiring and electrical insulation that was part of the Subject Aircraft and involved in the Flight 447 crash. On information and belief, DUPONT's Kapton-type wiring insulation was part of the Subject Aircraft, and was defective in the manner alleged above.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

28. This Court has general jurisdiction over defendant DUPONT as this defendant does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

29. Defendant TYCO ELECTRONICS CORPORATION ("TYCO") is a Pennsylvania corporation with its principal place of business in Berwyn, Pennsylvania. TYCO designs, manufactures, assembles, markets, and sells wiring and other electrical products, including aerospace wiring and electrical insulation that was part of the Subject Aircraft and involved in the Flight 447 crash. On information and belief, TYCO wiring insulation known as cross-linked tefzel, or Spec 55, was part of the Subject Aircraft, and was defective in the manner alleged above.

30. This Court has general jurisdiction over defendant TYCO as this defendant resides in this State and does continuous and systematic business in this State, sufficient to subject it to the jurisdiction of this State.

**GENERAL ALLEGATIONS**

31. On May 31, 2009, Air France Flight 447 departed Rio de Janeiro, Brazil, bound for Paris, France ("Flight 447"). The flight took place on an Airbus A330-200 aircraft registered F-GZCP (the "Subject Aircraft"), with 216 passengers and 12 crew members on board. Due to design and manufacturing defects in the Subject Aircraft and its components, Flight 447 crashed into the Atlantic Ocean approximately 680 miles off the coast of Brazil, killing everyone on board.

32. The Plaintiffs herein are the parents, heirs, survivors, successors-in-interest, and co-personal representatives of the estate of their minor son, a fare-paying passenger on board Air France Flight 447.

33. Flight 447 was operated by the commercial airline Societe Air France ("Air France"), which also owned or leased the Subject Aircraft.

34. On a date prior to the crash, AIRBUS designed, manufactured, assembled, marketed, and sold Subject Aircraft. At the time that the Subject Aircraft left the custody and control of AIRBUS, it was in a defective and unreasonably dangerous condition, including that

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

the radar system did not provide accurate data and weather information; the pitot tubes had a tendency to become blocked and provide inaccurate speed information to the aircraft's air data inertial reference units ("ADIRU") and flight control computers; the angle of attack sensors provided inaccurate data to the ADIRUs and fight control computers; the ADIRUs provided inaccurate information to the flight control computers and failed to filter out erroneous data concerning airspeed and angle of attack; the flight control computers failed to filter out erroneous data from the ADIRUs and their component parts; the sidestick controls provided inaccurate information to the flight control computers; the fight control computers were such that they did not prevent dangerous, erroneous, and unauthorized flight control movements; the on-board software installed on the flight control computers, ADIRUs, and other components failed to adequately filter out inaccurate data and provided erroneous information; the microprocessors (designed and sold by INTEL, MOTOROLA, and FREESCALE) used in the flight control computers, ADIRUs, and other components were defective and failed to work properly onboard the aircraft, prevented the installed software from functioning properly, created inaccurate data, failed to filter out erroneous data, and lacked sufficient protection from electromagnetic interference such that they failed to work properly when exposed to said interference, resulting in improper functioning of the flight control computers, ADIRUs, and other computing components that created and provided dangerously inaccurate speed and angle of attack data; the on-board ice detection system failed to properly detect and warn of the accumulation of ice on the aircraft, including its engines; the aircraft engines lacked sufficient power to allow the aircraft to recover from a stall in reasonably anticipated situations; the aircraft engines experienced uncommanded power surges that resulted in the aircraft departing from controlled flight; the aircraft engines were subject to accumulation of ice and did not include a safe method to detect, warn, and remove accumulated ice on the aircraft and its engines; the aircraft wiring was subject to wet and dry arcing, chafing, cracking, hydrolysis and pyrolization of insulation, which resulted in inaccurate information to be sent to the ADIRUs and flight control computers; the wiring insulation on the Subject Aircraft did not provide sufficient protection to the aircraft wiring, allowing wet and dry arcing, chafing, cracking,

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

hydrolysis and pyrolization to occur, which resulted in inaccurate information to be sent to the ADIRUs and flight control computers; the ADIRUs, flight control computers, and other aircraft components lacked sufficient protection from electromagnetic interference; and the aircraft was unable to adequately or safely recover from unusual altitudes. These defects all contributed to and were a proximate cause of the crash of Air France flight 447.

35. Defendant HONEYWELL designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the ADIRU. The ADIRU and other component parts designed and manufactured by HONEYWELL were defective when they left the custody and control of HONEYWELL, and a proximate cause of the crash as alleged above.

36. Defendant ROCKWELL COLLINS designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the radar system. The radar system and other component parts designed and manufactured by ROCKWELL COLLINS were defective when they left the custody and control of ROCKWELL COLLINS, and a proximate cause of the crash as alleged above.

37. Defendant THALES designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the pitot tubes and the software installed on the ADIRUs and flight control computers. The pitot tubes, software, and other component parts designed and manufactured by THALES were defective when they left the custody and control of THALES, and a proximate cause of the crash as alleged above.

38. Defendant MOTOROLA designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the microprocessors in the ADIRUs and flight control computers. The microprocessors and other component parts designed and manufactured by MOTOROLA were defective when they left the custody and control of MOTOROLA, and a proximate cause of the crash as alleged above.

38. Defendant FREESCALE designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

microprocessors in the ADIRUs and flight control computers. The microprocessors and other component parts designed and manufactured by FREESCALE were defective when they left the custody and control of FREESCALE, and a proximate cause of the crash as alleged above.

40. Defendant INTEL designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the microprocessors in the ADIRUs and flight control computers. The microprocessors and other component parts designed and manufactured by INTEL were defective when they left the custody and control of INTEL, and a proximate cause of the crash as alleged above.

41. Defendant HAMILTON SUNDSTRAND designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the sidestick control. The sidestick control and other component parts designed and manufactured by HAMILTON SUNDSTRAND were defective when they left the custody and control of HAMILTON SUNDSTRAND, and a proximate cause of the crash as alleged above.

42. Defendant GE designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the aircraft engines. The aircraft engines and other component parts designed and manufactured by GE were defective when they left the custody and control of GE, and were a proximate cause of the crash as alleged above.

43. Defendant ROSEMOUNT designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the angle of attack sensors and in-flight ice detection system. The angle of attack sensors, in-flight ice detection system, and other component parts designed and manufactured by ROSEMOUNT were defective when they left the custody and control of ROSEMOUNT, and were a proximate cause of the crash as alleged above.

44. Defendant DUPONT designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the wiring and wiring insulation used on the Subject Aircraft. The wiring and other component parts designed

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

and manufactured by DUPONT were defective when they left the custody and control of these Defendants, and were a proximate cause of the crash as alleged above.

45. Defendant TYCO designed, manufactured, assembled, marketed, and sold, component parts included on the Subject Aircraft, including but not limited to the wiring and wiring insulation used on the Subject Aircraft. The wiring and other component parts designed and manufactured by TYCO were defective when they left the custody and control of these Defendants, and were a proximate cause of the crash as alleged above.

46. The defendants also failed to include adequate warnings of the above-described defects, and AIRBUS failed to provide its Airbus A330 pilots with sufficient manual flight training and testing during initial type qualification, and did not take sufficient steps to ensure that the Airbus A330 pilots remained proficient in flying the aircraft manually.

47. As a direct and proximate cause of the defects, negligence, and other misconduct alleged herein, each Defendant is liable to Plaintiffs for all the damages caused to those killed in Flight 447, as well as survivor damages due to Plaintiffs. The amount in controversy well exceeds $75,000.

**COUNT I**

**Negligence; Against all Defendants**

48. Plaintiffs reallege Paragraphs 1 through 47 as though fully set forth herein.

49. In designing, manufacturing, assembling, marketing, and selling the Subject Aircraft and its component parts, Defendants owed Plaintiffs and their decedent a duty to design and manufacture the aircraft and its component parts in such a way that they were reasonably safe, free of defects, and would not cause injury or death to aircraft passengers. Defendants knew that the Subject Aircraft and its component parts would be used for air travel and any defects would create the serious risk of harm or death.

50. Defendants breached their duties to Plaintiffs and their decedents by defectively designing the Subject Aircraft and its component parts, as alleged above. Defendants further breached their duties to Plaintiffs by defectively manufacturing the Subject Aircraft and its component parts, as alleged above.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

51. As a direct and proximate result of Defendants' negligence, the Subject Aircraft crashed into the Atlantic Ocean on June 1, 2009, killing Plaintiffs' decedent, causing severe terror and pain prior to impact, and resulting in both personal and pecuniary injuries, in an amount to be proven at trial. Plaintiffs are the decedent's parents, surviving heirs and successors-in-interest, who have suffered grief, loss of support, companionship, and care, in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment as fully set forth below.

**COUNT II**

**Products Liability; Against all Defendants**

52. Plaintiffs reallege Paragraphs 1 through 51 as though fully set forth herein.

53. Defendants designed, manufactured, assembled, marketed, and sold the Subject Aircraft and its component parts, as alleged above. The Subject Aircraft and its component parts were defective and unreasonably dangerous, and left the custody and control of Defendants in that defective and unsafe condition. Defendants knew that their defective products were to be used in a commercial aircraft, and any such defect was likely to result in serious injury or death.

54. On information and belief, there were alternative, safer designs for the Subject Aircraft and the component parts described above, that would have prevented or significantly reduced the risk of injury and death when used as part of a commercial aircraft. These alternative designs were economically and technologically feasible at the time of design and manufacture.

55. Defendants further failed to provide warnings to each other, Air France, Plaintiffs' decedents, and Plaintiffs of the defective and unreasonably dangerous design and manufacturing defects present in their products used aboard the Subject Aircraft, or that such defects could and would result in serious risk of injury and death.

56. As a direct and proximate result of the design and manufacturing defects as alleged above, and Defendants' failure to warn, the Subject Aircraft crashed into the Atlantic Ocean on June 1, 2009, killing Plaintiffs' decedents, causing severe terror and pain prior to

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

impact, and resulting in both personal and pecuniary injuries, in an amount to be proven at trial. Plaintiffs are the decedent's parents, surviving heirs and successors-in-interest, who have suffered grief, loss of support, companionship, and care, in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment as fully set forth below.

**PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendants as follows:

A. Damages to be awarded in an amount to be determined at trial, including general, special, and compensatory damages;

B. Prejudgment interest;

C. Costs incurred in bringing this suit; and

D. Such other and further relief as the Court may deem just and proper.

Dated: July 2, 2010

Michael P. Verna
Steven P. McFarlane
Attorneys for Plaintiffs
BOWLES & VERNA, LLP
2121 n. California Blvd., Suite 875
Walnut Creek, California 94596
Tel: (925) 935-3300
Fax: (925) 935-0371
Email: mverna@bowlesverna.com

James Healy-Pratt
Stewarts Law, LLP
5 New Street Square
London EC4A 3BF
United Kingdom
Telephone: +44 (0) 20 7822 8000
Email: jhp@stewartslaw.com
(admitted to bar of New York; *pro hac vice* application pending)
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all claims for which a jury trial is available, pursuant to Federal Rules of Civil Procedure 38(a) and (b).

Dated: July 2, 2010

Michael P. Verna
Steven P. McFarlane
Attorneys for Plaintiffs
BOWLES & VERNA, LLP
2121 n. California Blvd., Suite 875
Walnut Creek, California 94596
Tel: (925) 935-3300
Fax: (925) 935-0371
Email: mverna@bowlesverna.com

James Healy-Pratt
Stewarts Law, LLP
5 New Street Square
London EC4A 3BF
United Kingdom
Telephone: +44 (0) 20 7822 8000
Email: jhp@stewartslaw.com
(admitted to bar of New York; *pro hac vice* application pending)
Attorneys for Plaintiffs